## CELLULOID MANUF'G Co. and another *v.* TOWER.[1]

*(Circuit Court, D. Massachusetts. September 30, 1885.)*

1. PATENTS FOR INVENTIONS—PRIOR DECISION, HOW FAR A PRECEDENT.
   In an earlier case under this patent (*Celluloid Manuf'g Co. v. Pratt*, 21 Fed. Rep. 313) the question of patentability was raised by the pleadings and evidence, and considered by the court, but no stress was laid on that defense in the argument. *Held,* that this fact deprived the decision of all weight as a precedent in a case where the question of patentable novelty was raised and argued.

2. SAME.
   No decision can amount to a precedent unless made after full argument.

3. SAME—INVENTION.
   The use of an old material in an old way, to accomplish an old result, is not invention.

4. SAME—PARTICULAR PATENT.
   Letters patent No. 210,780, of December 10, 1878, to Celluloid Manufacturing Company, for improvement in piano keys, are void for want of patentable novelty.

In Equity.

*Frederic H. Betts,* for complainants.

*E. M. Felt, H. M. Ruggles,* and *B. F. Thurston,* for respondent.

Heard by COLT and CARPENTER, JJ.

CARPENTER, J. This is a bill to restrain infringement of letters patent No. 210,780, and dated December 10, 1878, granted to the complainant as assignee of John W. Hyatt, for an improvement in piano keys. The claims of the patent are as follows:

"(1) As a new article of manufacture, a blank key-board covered with a continuous strip or roll of plastic composition, substantially as specified. (2) The within-described process of forming piano or analogous keys, which consists in covering a key-blank with a strip of plastic material, and then cutting out each key from the coated blank, substantially as specified."

The evidence shows that in the manufacture of a key-board for a piano-forte, or other musical instrument, the first step is to form a strip of wood of the size of the whole key-board, and with the groove and mortises which are required for each key. The front edge of this strip of wood, and that part of the top thereof which will appear in sight when the piano is completed, are then covered or veneered with ivory, celluloid, wood, or other suitable substance; the veneer is fin-

---

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

ished or polished; and the key-board is then sawn transversely into separate keys.

The respondent denies infringement on two grounds: In the first place, he contends that the claim of the patent is for a key-board of which the top and front are covered with a single continuous strip of plastic material, whereas the key-board made by the respondent is veneered with one strip for the front, and with a separate strip for the top. In the second place, he contends that the claim of the patent is for one continuous strip of veneer, extending from one end to the other of the key-board, whereas the key-board made by the respondent is covered on the top with two and sometimes three sheets of celluloid.

This patent was the subject of the controversy in *Celluloid Manuf'g Co.* v. *Pratt*, 21 Fed. Rep. 313. In that case the respondents did not deny the patentability of the invention, but denied infringement on the same grounds which are here urged, and under a similar state of proof. We do not think it necessary to say more on the question of infringement than that we adopt the conclusions of Judge SHIPMAN as announced in that case, and hold that the respondent here infringes the complainants' patent.

In this case, however, the respondent denies that the patent shows any patentable invention. The complainants reply that this question was raised by the pleadings and evidence in the case above cited, and was therein decided in favor of the complainants, and that the decision in that case should be taken here as a governing precedent. We cannot agree with this view. Undoubtedly the judgment in that case concludes the parties thereto on the question of patentability, although no stress was laid on the question by the counsel for the respondents in the argument. But the fact that the question of patentability was not argued, deprives the decision of all weight as a precedent in this case, where the question is raised and argued. No decision, as it seems to us, can amount to a precedent unless made after full argument. We therefore have proceeded to consider the defense of want of patentability.

The evidence shows that long prior to the alleged invention blank key-boards had been covered with continuous sheets of veneer covering several keys. Without detailing other examples, it is sufficient to refer to the fact that Steinway & Sons, of New York, before the year 1860, made and sold two piano-fortes, the key-boards of which were made in the following manner, as described by the witness William Steinway:

He covered the front portion of two grand piano key-boards with one continuous broad sheet of ivory, without any joint whatever in said sheets, extending the whole length of the width of the key-board, and said sheets being of the width of that portion of said key-boards in sight in the finished piano,—about seven inches. * * * I saw both key-boards; the ivory polished ready to be sawed up; both sheets of ivory glued on and in position. After being sawed up into keys, said two key-boards each went into a grand piano,

became part of such piano-forte, and the instruments containing said keyboards, after being publicly exhibited in Steinway & Sons' warerooms, No. 82 and 84 Walker street, New York, for several months, by myself, were sold and delivered to purchasers.

The evidence shows that no difficulty was encountered in the manufacture of these key-boards, and that they were well adapted to the required use. It also appears in evidence that the use of celluloid and similar substances for covering key-boards was known, and had been described in letters patent No. 174,001, granted February 22, 1876, to Ulysses Pratt. The history of the alleged invention may be briefly stated as follows. The inventor knew, from his knowledge of the state of the art, that key-boards might be covered or veneered in either of two ways; that is to say, either by covering that part of the key-board which was to form each key, with a separate piece of veneer, or by covering the whole key-board, or that part thereof intended to form two or more keys, with a continuous sheet of the covering material. He also knew that plastic material, particularly celluloid and similar substances, might be used for such covering. He also knew that the usual method of covering was to use one or more separate pieces of the veneer for each key. But he observed that when this method was used with celluloid, there was a difficulty in the manufacture. This difficulty, and the device by which it was avoided, are described by the inventor as follows.

"One difficulty was that in applying the cement, which contained a solvent of the celluloid, to the surface of the wood, and also of the strip of celluloid, the celluloid in a short time would absorb a large part of the solvent, which would slightly swell the strip, and which, in the course of a week or two, would again shrink and would form a slightly concave surface, both of the celluloid covering and the upper surface of the wooden key. It would also, in many cases, leave too little width of the key, and make the keys too far apart, injuring the appearance greatly. The same shrinkage, or rather tendency to shrinkage, occurs in the whole sheet which covers the key-board, but the series of short curves which occurs by the use of the single strip is prevented in the case of the whole sheet, as the key-board is sufficiently strong to resist the shrinkage of the continuous sheet, and the wavy appearance is thus obviated."

The invention claimed by the patent seems to us to be nothing more than the use of an old material, in an old way, to accomplish an old result. The experience of the trade had shown that it was difficult to obtain sheets of ivory of uniform quality, and of the size requisite to cover the whole key-board, and therefore, in covering with ivory, the better method was to cover each key by a separate strip of that material. The inventor observed that narrow strips of celluloid were likely to warp, and therefore he adopted the other well-known method, which consisted in using a continuous strip. We see here no patentable invention.

It has been strenuously argued, on behalf of the complainants, that this patent ought to be sustained, on the ground that the use of the new material is patentable, because a new result is thereby obtained.

The doctrine here invoked is stated by the supreme court in the following language:

"If such a substitution involves a new mode of construction, or develops new uses and properties of the article formed, it may amount to invention." *Smith* v. *Goodyear Dental Vulcanite Co.*, 93 U. S. 486.

We do not think the doctrine applies to this case. The mode of construction adopted by the inventor is not new, and we find no evidence in the case to show that the article produced by him has any new uses or properties. Certainly it has no new uses, since both his product and that formerly made are used for the same purpose. Nor does it appear that they do not serve that purpose equally well. In fact, the evidence shows that keys covered with ivory are superior in appearance to those made by the patented method, and that the only advantage arising from the use of celluloid, however applied, is in cheapness of production. We therefore conclude that the patent discloses no patentable invention, and the bill ought to be dismissed.